## STEPHEN S. SHERMAN *vs.* THOMAS BRAMAN.

B. took up beasts doing damage on his land, and impounded them in his own enclosure for several hours, and then drove them towards the town pound, and delivered them, in the highway near the pound, to the pound keeper, (who was also a field driver,) as cattle taken doing damage, but did not leave with the pound keeper a written memorandum, as required by the Rev. Sts. *c.* 113, § 6, stating the cause of impounding and the sum that he demanded for the damage done : The pound keeper put the beasts into the pound, and gave the owner the notice required to be given by field drivers when they impound beasts taken up for going at large contrary to law. *Held,* that B. became a trespasser *ab initio,* by failing to leave with the pound keeper the written memorandum required by law, and was answerable to the owner of the beasts in an action of trespass for taking, driving away and detaining them.

TRESPASS for taking, driving away and detaining the plaintiff 's cattle. ` At the trial in the court of common pleas, before *Colby,* J. it appeared that the plaintiff and defendant resided in Norton, about a mile from each other, and that, on the night of the 21st of August 1845, the plaintiff 's cattle were put

into his barn yard, and that the bars of the yard were put up; that the cattle, very early in the morning of the next day, were in the highway, near the house and adjoining the land of the defendant, and that the defendant impounded them in his field or enclosure, claiming to have taken them for doing damage to his apple trees, (the limbs of which extended over the highway,) eating his apples, and throwing down his fences. Evidence was submitted to the jury, which tended to show that the cattle, while in the highway, damaged some of the branches of said trees, and ate the apples thereon.

The plaintiff requested the court to instruct the jury, that the defendant, not being a field driver, had no right to take up and impound the cattle, being upon the highway, although they, while in the highway, damaged his trees which over-hung it. But the court instructed the jury, that if the cattle, while in the highway, did any damage, however slight, to the plaintiff's trees, he might lawfully impound them as taken doing damage on his premises.

It also appeared that within an hour or two after the cattle were thus impounded by the defendant, in his close, the plaintiff came in pursuit of them, and learned that they were thus impounded; and that there was then a conversation between the plaintiff and defendant concerning the cattle; and that the cattle remained in the defendant's custody, where they were first impounded, until four or five o'clock in the afternoon of the same day, when the defendant drove them towards the town pound in Norton, which was four miles from the residence of both parties and from the place where the cattle were first impounded, and there delivered them to the pound keeper, (who was also a field driver,) as cattle taken by the plaintiff doing him damage.

The pound keeper testified that he received the cattle in the highway near the pound, in his capacity of field driver, and then impounded them, and proceeded to give the notice required to be given by a field driver; and that he kept the cattle impounded in the town pound for several days, but finally delivered them to the plaintiff.

It did not appear that the defendant left with the pound keeper any memorandum in writing, stating the cause of impounding or the damages claimed. The pound keeper testified that when the defendant delivered the cattle to him, he wrote a paper and left it with him, and took it away on the next day. But there was no evidence as to the contents of said paper.

The court instructed the jury, that if the plaintiff's cattle were in the highway, doing any damage to the defendant's trees which overhung it, and he impounded them in his enclosure in the morning, the plaintiff knowing that they were there impounded, and if, in the afternoon, the defendant drove them to the town pound, a distance of four miles, it not appearing whether there was any other town pound in Norton, and there delivered them to the field driver, as cattle taken doing him damage, he had a right to do so, and was not bound to do any further act, unless he claimed damages; and that, if he waived his damages, or claimed none, when the cattle were delivered to the field driver, he was not bound to leave any memorandum in writing, or to cause notice to be given to the plaintiff.

The jury found a verdict for the defendant, and the plaintiff alleged exceptions to the aforesaid instructions.

*Pratt,* for the plaintiff.

*Coffin & Daggett,* for the defendant.

SHAW, C. J. In trespass for taking and driving away the plaintiff's cattle, the defendant justifies, on the ground that he found the cattle doing damage to his land, and that he took them up and impounded them, as he lawfully might do.

In considering this difficult subject of the impounding of cattle, it is necessary to keep in mind the two distinct classes of cases provided for by the statutes. The first is that of cattle unlawfully at large on the highways or commons, where the object is, to prevent a nuisance and punish the negligent owner. The other is, where cattle are found doing damage to the land of another, and where the party injured has a right to impound them, as a means of redress for his

particular injury. The course of proceeding in the two classes is, in many respects, distinct and peculiar, adapted to accomplish the different objects for which it is resorted to.

A verdict having been found for the defendant, in the present case, under the directions given by the court, exceptions were taken to several of those directions; but it may not be necessary to consider all of them.

Suppose the defendant had a right to take up the cattle, as cattle doing damage to his land, although they did not pass from the highway into his enclosure, (of which, as the facts are not particularly stated, we give no opinion,) the ground mainly relied upon by the plaintiff is, that the defendant, having taken up the cattle, did not conform to the requirements of the statute, in impounding them. The evidence tended to show that the defendant, in the first instance, imprisoned the cattle in his own field or enclosure, of which the owner of the cattle, (the plaintiff,) in a short time, had notice; having come in search of them, and found them thus imprisoned by the defendant. In the afternoon of the same day, the defendant drove the cattle towards the town pound, and delivered them, near the pound, to a person who was at the same time a field driver and pound keeper; and he impounded them as cattle going at large in the highway. The defendant left no memorandum with the pound keeper, stating that he had taken the cattle up and detained them because they were doing damage to his land, or stating the amount of his claim for damages.

We may lay out of our consideration the statute provisions, directing the proceedings where beasts are distrained and taken up for going at large in the highways, contrary to law. The defendant did not claim to take them for that cause, nor justify on that ground, but because they were doing damage to his land.

When a person is injured in his land, by cattle, the statutes provide, as one among other modes, that he may recover his damages by distraining the beasts doing the damage, and by proceeding in the manner therein directed Rev. Sts. *c.* 113,

§ 4. Such beasts, by § 5, may be impounded, either in the town pound, or in some suitable place under the immediate care and inspection of the person distraining them. But having elected one of these modes, he cannot, we think, afterwards abandon it and pursue the other; because the course of proceeding is different, and the two are inconsistent with each other. In case of impounding in the town pound, "the distrainer shall leave with the pound keeper a memorandum in writing, under his hand, stating the cause of impounding, and the sum that he demands from the owner, for the damage done by the beasts," and for charges; and if he impounds them in any other place, he is to give a like memorandum to the owner of the beasts, if demanded by him; the same to be given within twenty four hours. Rev. Sts. c. 113, §§ 6, 8. The course of proceeding, on the part of the owner of the beasts, is different in the two cases. In the one, he is to apply to the distrainer and make certain payments to him. In the other, he is to apply to the pound keeper, and make certain payments to him.

But if this were doubtful, and if, after impounding the cattle first in his own enclosure, the distrainer might afterwards transfer them to the town pound, he would be subject to the same duties, and must comply with the same requirements of law, as if he had originally impounded them in the town pound. But he did not, in the present case, comply with the indispensable duty of leaving with the pound keeper a memorandum, under his hand. This document is the pound keeper's only warrant for detaining the cattle and demanding his fees, and is indispensable to his justification and security. Without it, he himself would be a trespasser.

But, suppose the evidence would warrant the conclusion, that when the defendant drove the cattle towards the town pound, and being in the highway, the pound keeper, who was also a field driver, took them, as being at large contrary to law, and that there was a new taking, from and after which the defendant was exempted from all further responsibility for them, or duty respecting them. It is difficult to adopt

this hypothesis; because it is stated that the defendant delivered the cattle to the field driver near the pound, and then and there they were not at large contrary to law. But if the evidence would sustain this hypothesis, we do not perceive how it would aid the defendant in his defence of this action. How would the case then stand? It would appear that the defendant took up the cattle, in the morning, damage feasant, and impounded them, as he might, on his own premises. If he did not give notice to the owner, he failed to comply with the law. If he did give notice, it must have been notice that the cattle were impounded on his own premises, and that, upon paying the damage, the owner might there have them. But, instead of detaining them there, for that purpose, he drove them several miles, under pretence of impounding them, but did not impound them. On the contrary, he left them in the highway, where it was unlawful for them to be, by which they were liable to be taken up, and the owner was exposed to the loss of the cattle, or to heavy penalties and costs. This, then, is no justification to the defendant for the taking in the morning, whether the pound keeper did right or wrong in his taking or treatment of the cattle afterwards.

The court directed the jury, among other things, that if the defendant delivered the cattle to the field driver, who was pound keeper, as cattle taken doing him damage, he had a right to do so, and was not bound to do any further act, unless he claimed damages; that if he waived his damages, or claimed no damages, when the cattle were delivered to the field driver, he was not bound to leave any memorandum in writing, or cause notice to be given to the plaintiff. We think these directions were not correct in point of law. We cannot perceive that it makes any difference, that the pound keeper was also a field driver. The defendant's justification is, that he carried the cattle to the town pound and delivered hem to the pound keeper. The memorandum, which the statute requires to be given to the pound keeper, is not only o give notice of the distrainer's claim for damages, and its

amount, but also the cause of taking. He must also give notice, to the party, of the time, place and cause of impounding. We think, therefore, the verdict must be set aside, and a new trial ordered.

The defendant, having, in the first instance, acted under an authority vested in him by law, and afterwards abused it, or failed to comply with the terms and conditions on which it was granted, must be deemed a trespasser *ab initio.*